# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Wisconsin Voters Alliance, et al.,                                        Case No. _____

                                        Plaintiffs,

v.

Vice President Michael Richard Pence, et al.,

                                        Defendants.

### Plaintiffs' Memorandum in Support of Motion for Preliminary Injunctive Relief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................iv

INTRODUCTION ......................................................................................................................1

BACKGROUND ........................................................................................................................3

A.   Defendants, except the constitutionally-required state legislatures, are involved in post-election certification of Presidential votes and of Presidential electors or counting of their ballots to elect the President and Vice President. ........................................................3

B.   None of the Presidential Electors certified by the Governors of the Defendant States received state legislative post-election certification; their votes should not be counted by Congress and the Vice President on January 6, 2021. .................................................7

C.   Federal and state court post-election Presidential election contests and recounts preclude state legislative post-election certification of Presidential votes and Presidential electors. ...........................................................................................................8

     1.   The U.S. Supreme Court and Florida Supreme Court decisions in *Bush v. Gore* are examples of federal court and state court interference conflicting with a state legislature's Article II post-election certification prerogatives. ...................................8

     2.   The Defendant States have election contest or recount laws, which apply to Presidential elections. .............................................................................................9

     3.   In 2020, approximately thirty post-election lawsuits are filed in Defendants States regarding election official errors and improprieties. ..............................................9

     4.   In 2020, Texas sued Pennsylvania, Michigan, Wisconsin and Georgia in the U.S. Supreme Court to adjudicate election irregularities and improprieties. ....................9

D.   The Defendants violate the Plaintiffs' constitutionally-protected voting rights by certifying Presidential electors who have not received state legislative post-election certification and by counting their votes. ...........................................................................10

E.   This motion for preliminary injunction is filed to avoid a constitutional crisis. ...........................11

ARGUMENT.............................................................................................................................12

I.   The D.C. Circuit applies a four-part test for granting a preliminary injunction. ...........................13

II.   The Plaintiffs are likely to succeed on the merits. ...........................................................13

     A.   Federal law—3 U.S.C. §§ 5, 6, 15—and the state laws—Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann. § 21-2-499 (B), Mich. Comp. Laws. § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat. § 3166—are constitutionally unauthorized and they violate voters' rights to state legislative post-election certifications. ...................................14

1.  Voter rights are guaranteed under Article II to the state legislatures' post-election certifications of their votes and of Presidential electors.....................................14

2.  Article II's imperative sentence regarding Presidential elections requires that only the votes of Presidential electors who have received state legislative post-election certification count toward election of President and Vice President. ...............15

3.  3 U.S.C. §§ 5, 6 and 15 fail to constitutionally guarantee state legislative post-election certifications of votes and of Presidential electors...............................16

4.  Congress lacks Congressional authority to enact 3 U.S.C. §§ 5, 6 and 15 which preempt constitutionally-mandated state legislative post-election certification of Presidential votes and of Presidential electors, violating voting rights related thereto...................................................................................................................18

    a.  The textualist argument supports that the state legislatures, not Governors must conduct post-election certification of Presidential votes and of post-election certification of Presidential electors.............................18

    b.  The textual argument supports that 3 U.S.C. §§ 5, 6 and 15 are unconstitutional..................................................................................................22

    c.  Structuralist arguments also support that 3 U.S.C. §§ 5, 6 and 15 are unconstitutional..................................................................................................26

        1)  The Anti-Congress Principle.........................................................27

        2)  The Anti-Governors Principle.......................................................28

        3)  The Pro-State Legislatures Principle .........................................29

        4)  Conclusion ....................................................................................30

5.  The Defendant States violate Article II by their respective constitution and their respective state laws—Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann. § 21-2-499 (B), Mich. Comp. Laws. § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.  § 3166—by cancelling state legislatures out of post-election certifications of Presidential votes and of Presidential electors. ...................................31

    a.  The Arizona Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. .................................................................................................................32

    b.  The Georgia Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. .................................................................................................................33

c.   The Michigan Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. ..................................................................................................................33

d.   The Pennsylvania Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. ..................................................................................................................34

e.   The Wisconsin Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. ..................................................................................................................35

6.   The Presidential post-election court proceedings—like *Bush v. Gore,* the Texas original action and the thirty post-election lawsuits in Defendant States—are in constitutional error and unnecessarily politicize the federal and state courts. ................36

III.   The Plaintiffs have standing as voters because the Defendants are violating their voting rights to state legislative post-election certifications of their votes and of Presidential electors and to only the votes of Presidential electors so certified being counted toward the election of President and Vice President. ..................................................................................36

IV.   The Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief. ............42

V.   The balance of equities and the public interest tips in the Plaintiffs' favor. ................................43

CONCLUSION ..................................................................................................................45

# TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*, 742 F.3d 1023 (D.C.Cir.2014) ................................................................ 13

*Anderson v. Celebrezze,* 460 U.S. 780 (1983) .................................................................... 41

*Arizona* v. *California*, 589 U. S. ___ (Feb. 24, 2020) ......................................................... 10

*Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815 (D.C. Cir. 2009) ........... 43

*Baker v. Carr*, 369 U.S. 186 (1962) .................................................................................. 37

*\*Baten v. McMaster*, 967 F.3d 345 (4th Cir. 2020) ...................................................... 14, 37

*Burdick v. Takushi,* 504 U.S. 428 (1992) .......................................................................... 39

*\*Bush v. Gore*, 531 U.S. 98 (2000) ..............................................................................8, 36

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013) ......................................................... 36

*Davis v. Pension Ben. Guar. Corp.,* 571 F.3d 1288 (D.C.Cir.2009) .................................... 13

*Dumonde v. U.S.,* 87 Fed. Cl. 651 (Fed. Cl. 2009) ........................................................... 39

*Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985) ...................... 18

*\*Gill v. Whitford,* 138 S. Ct. 1916 (2018) .............................................................. 37, 38, 40

*Guttenberg v. Emery*, 26 F.Supp.3d 88 (D.D.C. 2014) ..................................................... 42

*Johnson v. FCC*, 829 F.2d 157 (D.C. Cir. 1987) ............................................................... 38

*Lane County v. Oregon,* 74 U.S. 71 (1869) ....................................................................... 18

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ........................................................ 36

*Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137 (1803) ..................................................... 39

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) .................................................................... 13

*McCulloch v. Maryland,* 17 U.S. 316 (1819) ..................................................................... 18

*Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F.Supp.3d 48 (D.D.C. 2017) ................ 42

*New York v. U.S.,* 505 U.S. 144 (1992) ............................................................................ 18

*Newman v. U.S. of America ex rel Frizzell*, 238 U.S. 537 (1915) ............................... 2, 11, 44

*Perez v. United States,* 402 U.S. 146 (1971) ...........................................................................18

*Purcell v. Gonzalez,* 549 U.S. 1 (2006) ..................................................................................38

*Reynolds v. Sims,* 377 U.S. 533 (1964) ..................................................................................38

*Sherley v. Sebelius,* 644 F.3d 388 (D.C.Cir.2011) .................................................................13

*Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014) ......................................................37

*Timmons v. Twin Cities Area New Party,* 520 U.S. 351 (1997) .............................................39

*United States v. Darby,* 312 U.S. 100 (1941) ........................................................................18

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977) ...........13

*Wesberry v. Sanders,* 376 U.S. 1 (1964) ................................................................................39

*Winter v. NRDC, Inc.,* 555 U.S. 7 (2008) ........................................................................ 42, 43

## Constitutional Provisions

U.S. Constitution, Article I ...........................................................................................23, 24, 26

U.S. Constitution, Article II .................................................................................................passim

U.S. Constitution, Article III.............................................................................................. 36, 37

Georgia Constitution of 1798 (http://founding.com/founders-library/government-documents/american-state-and-local-government-documents/state-constitutions/georgia-constitution-of-1798/) (last visited: December 18, 2020)..................................................................7, 29

## Statutes

3 U.S.C. § 5, 6 and 15 ..........................................................................................................passim

Ariz. Rev. Stat. § 16-212 (B) ................................................................................................passim

Ariz. Rev. Stat. § 16-672...................................................................................................... 9, 36

D.C. Code § 16-3501 ..............................................................................................2, 11, 43, 44

Ga. Code Ann. § 21-2-499 (B) ..............................................................................................passim

Ga. Code Ann. § 21-2-521 ................................................................................................... 9, 36

Mich. Comp. Laws § 168.46 ................................................................................................passim

Mich. Comp. Laws § 168.862................................................................................................ 9, 36

25 Pa. Cons. Stat. § 3166 ................................................................................................................. passim

25 Pa. Cons. Stat. § 3312 ................................................................................................................. 9, 36

25 Pa. Cons. Stat. § 3351 ................................................................................................................. 9, 36

Wis. Stat. § 7.70 (5) (b) ................................................................................................................... passim

Wis. Stat. § 9.01 ............................................................................................................................... 9, 36

## INTRODUCTION

The Plaintiffs move for a preliminary injunction enjoining the federal Defendants and state Defendants from Pennsylvania, Michigan, Wisconsin, Georgia and Arizona (Defendant States) from certifying Presidential electors and counting their votes where the Presidential electors did not receive state legislative post-election certification as required by Article II.

Article II contains an imperative sentence regarding Presidential elections that state legislatures, every four years, may direct the manner of state appointment of Presidential electors:

> He shall hold his office during the term of four years, and, together with the Vice President, chosen for the same term, be elected, as follows: Each state shall appoint, in such manner as the Legislature thereof may direct, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.

Specifically, the challenged federal and state laws[1] requiring Governor post-election certification of Presidential electors, currently considered as having full legal force and effect, have the legal consequence that the state legislatures, every four years, "may" NOT "direct" the "manner" of "appointing" the Presidential electors. Under this one constitutional imperative sentence, the state legislatures, not the Governors, have the constitutional prerogative to post-election certification. Absent the state legislative post-election certification of the Presidential electors, the federal Defendants cannot constitutionally count the votes of the Presidential electors from the Defendant States.

The Plaintiffs are voters who have constitutionally-protected voting rights to state legislative post-election certification regarding their votes for Presidential electors and constitutionally-protected voting rights that only the votes of Presidential electors who have received state legislative

---

[1] 3 U.S.C. § 5, 6 and 15 and Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat. § 3166.

post-election certification be counted by the federal Defendants to elect the President and Vice President.

A preliminary injunction is necessary to avoid a constitutional crisis. The constitutional crisis may be caused, after the January 20, 2021 inauguration of the President and Vice President, by a Presidential candidate or Presidential electors filing a post-inaugural civil action for writ of quo warranto to oust the President and Vice President.[2] The U.S. District Court has jurisdiction over a post-inaugural ouster of the United States President and Vice President. Specifically, D.C. Code § 16-3501, et seq., authorizes the U.S. District Court for the District of Columbia, in proper cases, instituted by proper officers or persons, to post-inaugural ouster of national officers of the United States including the President and Vice President of the United States. *Newman v. U.S. of America ex rel Frizzell*, 238 U.S. 537 (1915).

The Presidential candidate or Presidential electors could make two constitutional arguments against the votes the federal Defendants counted in the election of President and Vice President. First, U.S.C. § 5, 6 and 15 are unconstitutional because Congress does not have constitutional authority to assign post-election certification to the Governors as executives of the Defendant States and to direct Congress and the Vice President to count votes of Presidential electors who have not received state legislative post-election certification. Second, the Defendant States' state legislatures have unconstitutionally acquiesced to the federal laws by enacting state laws transferring post-election certification from the state legislatures to state executive branch officials: Ariz. Rev. Stat. § 16-212 (B) (Arizona Secretary of State), Ga. Code Ann.§ 21-2-499 (B) (Georgia Secretary of State and Governor), Mich. Comp. Laws § 168.46 (Michigan State Board of Canvassers and Governor),

---

[2] The Epoch Times, "Electors in 7 states cast dueling votes for Trump" at https://www.theepochtimes.com/mkt_app/electors-in-7-states-cast-dueling-votes-for-trump_3620059.html (last visited: Dec. 18, 2020).

Wis. Stat. § 7.70 (5) (b) (Wisconsin Elections Commission); and 25 Pa. Cons. Stat.  § 3166 (Secretary of Commonwealth and Governor).

The Plaintiffs agree with these constitutional arguments, but disagree about the wisdom of using the post-inaugural ouster procedure to litigate them. Waiting for the post-inaugural ouster creates an unnecessary constitutional crisis. Instead, the post-inaugural ouster should be the option of last resort.

Plaintiffs' motion for preliminary injunction is a better vehicle for this Court to adjudicate these constitutional claims in a timely way so that the constitutional provisions of the U.S. Constitution regarding Presidential electors, Article II and the Twelfth Amendment, are followed and a President and a Vice President are lawfully inaugurated on January 20, 2021.

## BACKGROUND

**A.**   **Defendants, except the constitutionally-required state legislatures, are involved in post-election certification of Presidential votes and of Presidential electors or counting of their ballots to elect the President and Vice President.**

Under 3 U.S.C. §§ 5, 6 and 15, each of the Defendants, except the state legislative leaders and their state legislatures, have a role to play in state post-election certification of Presidential votes, state post-election certification of a state's Presidential electors or counting of the Presidential Electors' votes. Under 3 U.S.C. § 15, "Congress shall be in session on the sixth day of January succeeding every meeting of electors. The Senate and House of Representatives shall meet in the Hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day." Under 3 U.S.C. § 15, Vice President Michael Richard Pence is the presiding officer on January 6, 2021: "and the President of the Senate shall be their presiding officer."

Vice President Pence, the U.S. Senate and the U.S. House of Representatives are Defendants who presume under 3 U.S.C. §§ 5 and 6, that each state's Presidential elector votes can be counted

because they are designated by the Governor of each Defendant State —even without state

legislative post-election certification. 3 U.S.C. § 5 provides:

> If any State shall have provided, by laws enacted prior to the day fixed for the appointment of the electors, for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State, by judicial or other methods or procedures, and such determination shall have been made at least six days before the time fixed for the meeting of the electors, such determination made pursuant to such law so existing on said day, and made at least six days prior to said time of meeting of the electors, shall be conclusive, and shall govern in the counting of the electoral votes as provided in the Constitution, and as hereinafter regulated, so far as the ascertainment of the electors appointed by such State is concerned.

3 U.S.C. § 6 provides:

> It shall be the duty of the executive of each State, as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment, to communicate by registered mail under the seal of the State to the Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast; and it shall also thereupon be the duty of the executive of each State to deliver to the electors of such State, on or before the day on which they are required by section 7 of this title to meet, six duplicate-originals of the same certificate under the seal of the State; and if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination in form and manner as the same shall have been made; and the certificate or certificates so received by the Archivist of the United States shall be preserved by him for one year and shall be a part of the public records of his office and shall be open to public inspection; and the Archivist of the United States at the first meeting of Congress thereafter shall transmit to the two Houses of Congress copies in full of each and every such certificate so received at the National Archives and Records Administration.

The Plaintiffs claim that the Federal Defendants' presumption is constitutionally incorrect;

under Article II's imperative sentence regarding Presidential elections, Defendants Vice President

Pence, the U.S. House of Representatives and the United States Senate can only open up and count

Presidential elector ballots if the state legislature has affirmatively voted post-election to certify the

Presidential electors; otherwise, the votes of the Presidential electors cannot be counted. The

Plaintiffs claim that the Vice President and U.S. Congress act unconstitutionally in this Presidential election and future Presidential elections when they count votes of Presidential electors where the respective state legislature has not affirmatively voted in favor of post-election certification.

Similarly, the Defendant States' executives, Governor Tom Wolf of Pennsylvania, Governor Gretchen Whitmer of Michigan, Governor Tony Evers of Wisconsin, Governor Brian Kemp of Georgia, and Governor Doug Ducey of Arizona under 3 U.S.C. § 6 and their respective state's laws, have designated the Presidential electors based on the assumption that state executive branch certification is all that is required.

But, Governor Tom Wolf of Pennsylvania, Governor Gretchen Whitmer of Michigan, Governor Tony Evers of Wisconsin, Governor Brian Kemp of Georgia, and Governor Doug of Arizona are constitutionally mistaken because the designation by the Governor of each Defendant State cannot cure that the Presidential electors are without state legislative post-election certification. Until the state legislature certifies the Presidential votes and the Presidential electors, the respective Governor's designation under 3 U.S.C. § 6 and their respective state's laws have no legal effect. Absent the state legislative post-election certification required by Article II's imperative sentence regarding Presidential elections, the Governor's designation of Presidential electors has no legal effect because their votes cannot be counted by the Vice President, U.S. Senate and U.S. House of Representatives.

Finally, Article II's imperative sentence regarding Presidential elections requires the Defendants' state legislative leaders to act to vote on post-election certification of the Presidential electors. But, instead, the state legislatures unconstitutionally defer because of their respective state laws which are a perpetual and wholesale delegation of post-election certification to state executive branch officials—as has been done in Ariz. Rev. Stat. § 16-212 (B) (Arizona Secretary of State), Ga. Code Ann.§ 21-2-499 (B) (Georgia Secretary of State and Governor), Mich. Comp. Laws § 168.46

5

(Michigan State Board of Canvassers and Governor), Wis. Stat. § 7.70 (5) (b) (Wisconsin Elections Commission); and 25 Pa. Cons. Stat.   § 3166 (Secretary of Commonwealth and Governor).

The Plaintiffs claim that Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, permanently left it to the state legislatures to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty.

In this way, the Defendant States' legislative leaders, including Speaker Bryan Carter of the Pennsylvania House of Representatives, Senate Majority Leader Jake Corman of the Pennsylvania Senate, Speaker Lee Chatfield of the Michigan House of Representatives, Senate Majority Leader Mike Shirkey of the Michigan Senate, Speaker Robin Vos of the Wisconsin State Assembly, Senate Majority Leader Howard Marklein of the Wisconsin Senate, Speaker David Ralston of the Georgia House of Representatives, Senate President Pro Tempore Butch Miller of the Georgia Senate, Speaker Russell Bowers of the Arizona House of Representatives, and Senate Majority Leader Rick Gray of the Arizona Senate are violating their duties under the federal Constitution by not voting on post-election certification of the Presidential electors so their votes can constitutionally count.

State legislative post-election certification of Presidential electors is a part of federally-guaranteed voting rights.

Further, the state constitutions of the Defendant States fail to require the state legislature to meet for post-election certification of the Presidential electors in violation of state legislative constitutional duties under Article II's imperative sentence regarding Presidential elections of the U.S. Constitution.  Arizona's, Georgia's and Pennsylvania's Constitutions have the state legislature adjourned until January 2021 subject to special sessions called by the Governor or state legislature. Arizona Const.; Georgia Const.; Pennsylvania Const.  Michigan's and Wisconsin's Constitutions permit the state legislature to be in session, but do not require a joint session of the state legislature

to affirmatively vote for post-election certification of Presidential electors. Michigan Const.; Wisconsin Const. By contrast, for example, the Georgia Constitution of 1798, Article IV, section 2, subsequently repealed, had clear procedures for state legislative certification of Presidential electors:

> Sec. 2. All elections by the general assembly shall be by joint ballot of both branches of the legislature; and when the senate and house of representatives unite for the purpose of electing, they shall meet in the representative chamber, and the president of the senate shall in such cases preside, receive the ballots, and declare the person or persons elected. In all elections by the people the electors shall vote viva voce until the legislature shall otherwise direct.[3]

Each voter who votes—distinguishable from those who don't—has a constitutionally-protected interest in state legislative post-election certification of their vote and of their state's Presidential electors. The federal Defendants violate those voting rights by counting ballots of Presidential electors without the constitutionally-required state legislative post-election certifications. The state Defendants violate those voting rights by not complying with constitutionally-required state legislative post-election certifications of Presidential votes and of Presidential electors.

**B.      None of the Presidential Electors certified by the Governors of the Defendant States received state legislative post-election certification; their votes should not be counted by Congress and the Vice President on January 6, 2021.**

On December 14, the Presidential electors for Biden and Trump met and voted in their Defendant States.  The Presidential electors for Biden in the Defendant States are certified by state executive branch officials under 3 U.S.C. § 6 and the respective states' election certification laws. Ariz. Rev. Stat. § 16-212 (B) (Arizona Secretary of State), Ga. Code Ann.§ 21-2-499 (B) (Georgia Secretary of State and Governor), Mich. Comp. Laws § 168.46 (Michigan State Board of Canvassers and Governor), Wis. Stat. § 7.70 (5) (b) (Wisconsin Elections Commission); and 25 Pa. Cons. Stat. § 3166 (Secretary of Commonwealth and Governor). The Presidential electors for Trump are not

---

[3] Georgia Constitution of 1798 (http://founding.com/founders-library/government-documents/american-state-and-local-government-documents/state-constitutions/georgia-constitution-of-1798/) (last visited: December 18, 2020).

certified in this way. But, neither the Presidential electors for Biden nor the Presidential electors for Trump in the Defendant States received a state legislative post-election affirmative vote for certification. The Presidential electors for Biden in the Defendant States voted for Biden as President and Harris as Vice President.[4] The Presidential electors for Trump in the Defendant States voted for Trump as President and Pence as Vice President. But, under Article II, none of these votes count because no Presidential electors have received state legislative post-election certification.

**C.     Federal and state court post-election Presidential election contests and recounts preclude state legislative post-election certification of Presidential votes and Presidential electors.**

Federal and state court post-election Presidential election contests and recounts preclude the state legislatures' post-election certifications of Presidential votes and of Presidential electors.  Under the Plaintiffs' interpretation of Article II, pre-election judicial proceedings are not a constitutional problem, but judicial post-election Presidential election contests and recounts conflict with the state legislatures' post-election certifications under Article II.

**1.     The U.S. Supreme Court and Florida Supreme Court decisions in *Bush v. Gore* are examples of federal court and state court interference conflicting with a state legislature's Article II post-election certification prerogatives.**

The court decisions in *Bush v. Gore* reflect examples of federal court and state court proceedings conflicting with a state legislature's Article II post-election certification prerogatives. On December 12, 2000, the U.S. Supreme Court issued a decision in *Bush v. Gore*, 531 U.S. 98 (2000), settling a state court recount dispute in Florida's 2000 presidential election between George W. Bush and Al Gore.  The U.S. Supreme Court decision allowed the previous vote certification made by Florida Secretary of State Katherine Harris to stand for George W. Bush, who thereby won

---

[4]The Epoch Times, "Electors in 7 states cast dueling votes for Trump" at https://www.theepochtimes.com/mkt_app/electors-in-7-states-cast-dueling-votes-for-trump_3620059.html (last visited: Dec. 18, 2020).

Florida's 25 electoral votes—and the Presidential election.  Neither the court decisions, nor Florida law, included the Florida state legislature conducting post-election certifications of the Presidential vote and of the Presidential electors.

### 2. The Defendant States have election contest or recount laws, which apply to Presidential elections.

Similarly, the Defendant States have election contest or recount laws, which apply to Presidential elections—like Florida's laws did in 2000:  Ariz. Rev. Stat. § 16-672; Ga. Code Ann.§ 21-2-521; Mich. Comp. Laws § 168.862; Wis. Stat. § 9.01; and 25 Pa. Cons. Stat.  § 3351. The Defendant States' laws do not provide for the state legislatures to engage in post-election certifications.  Interestingly, the Pennsylvania laws have a state legislative post-election certification process for its Governor and Lieutenant Governor elections. 25 Pa. Cons. Stat.  § 3312, et seq.

### 3. In 2020, approximately thirty post-election lawsuits are filed in Defendants States regarding election official errors and improprieties.

Approximately thirty post-election lawsuits regarding Pennsylvania, Michigan, Wisconsin, Georgia and Arizona election official errors and improprieties were filed.[5]  The Complaint and its citations to the appendix detail allegations of Pennsylvania, Michigan, Wisconsin, Georgia and Arizona election official errors and improprieties.  In Defendants' states, voter allegations exists which are the election officials' errors and improprieties exceed the razor-thin margins of Presidential contests.

### 4. In 2020, Texas sued Pennsylvania, Michigan, Wisconsin and Georgia in the U.S. Supreme Court to adjudicate election irregularities and improprieties.

On December 7, 2020, Texas filed an original action in the U.S. Supreme Court, Case No. 22O155, against Pennsylvania, Michigan, Wisconsin and Georgia for election irregularities and

---

[5]*See "*Postelection lawsuits related to the 2020 United States presidential election," found at *https://en.wikipedia.org/wiki/Postelection_lawsuits_related_to_the_2020_United_States_presidential_election# Wood_v._Raffensperger* (last visited: Dec. 15, 2020).

improprieties.  On December 9, Missouri and 16 other states filed a motion for leave to file an

amicus curiae brief in support of Texas. On December 10, U.S. Representative Mike Johnson and

105 other members submitted a motion for leave to file amicus brief in support of Texas. On

December 11, the U.S. Supreme Court dismissed the original action in a text order:

> The State of Texas's motion for leave to file a bill of complaint is denied for lack of
> standing under Article III of the Constitution. Texas has not demonstrated a judicially
> cognizable interest in the manner in which another State conducts its elections. All
> other pending motions are dismissed as moot. Statement of Justice Alito, with whom
> Justice Thomas joins: In my view, we do not have discretion to deny the filing of a bill
> of complaint in a case that falls within our original jurisdiction.
> See *Arizona* v. *California*, 589 U. S. ___ (Feb. 24, 2020) (Thomas, J., dissenting). I would
> therefore grant the motion to file the bill of complaint but would not grant other relief,
> and I express no view on any other issue.[6]

**D.    The Defendants violate the Plaintiffs' constitutionally-protected voting rights by
certifying Presidential electors who have not received state legislative post-election
certification and by counting their votes.**

The Defendants violate the Plaintiffs' constitutionally-protected voting rights by recognizing

Presidential electors who have not received state legislative post-election certification and by

counting their votes. Under Article II's imperative sentence regarding Presidential elections,

Defendants can only certify Presidential electors and count their votes if they have received state

legislative post-election certification—which none have.

The federal laws regarding the Presidential electors, 3 U.S.C. §§ 5, 6 and 15, are

constitutionally unauthorized. Article II and the Twelfth Amendment of the Constitution establish a

non-delegable process where at least state legislative post-election certification of the state's

Presidential electors is constitutionally required for Presidential elector votes to be counted in the

election of the President and Vice President. In contradiction, the federal laws, 3 U.S.C. §§ 5, 6 and

---

[6] Plaintiffs agree that the State of Texas lacked standing, but the original action itself begs the
question, "Is the U.S. Supreme Court the final adjudicator for certification of Presidential electors?"
The Plaintiffs' answer is no; the respective state legislatures are the final determiner of certification
of Presidential electors—and, in a non-delegable way.

15, establish a different process where Presidential electors are designated by the Governor of each Defendant State without state legislative post-election certification—and, then, their votes are counted to elect the President and Vice President.

The Defendant States have legally acquiesced to the federal laws by enacting statutes transferring post-election certification from the state legislatures to state executive branch officials: Ariz. Rev. Stat. § 16-212 (B) (Arizona Secretary of State), Ga. Code Ann.§ 21-2-499 (B) (Georgia Secretary of State and Governor), Mich. Comp. Laws § 168.46 (Michigan State Board of Canvassers and Governor), Wis. Stat. § 7.70 (5) (b) (Wisconsin Elections Commission); and 25 Pa. Cons. Stat. § 3166 (Secretary of Commonwealth and Governor). These state laws also violate Article II which establishes the state legislative prerogative to post-election certification of Presidential electors.

### E.  This motion for preliminary injunction is filed to avoid a constitutional crisis.

The Plaintiffs file this complaint to avoid a constitutional crisis that would be involved in a post-inaugural ouster of the United States President and Vice President under D.C. Code § 16-3501, et seq., which authorizes the U.S. District Court for the District of Columbia, in proper cases, instituted by proper officers or persons, to oust national officers of the United States post-election, including the President and Vice President of the United States. *Newman v. U.S. of America ex rel. Frizzell*, 238 U.S. 537 (1915).

Instead, to avoid that post-inaugural constitutional crisis, the Plaintiffs as voters file this preliminary injunction motion against federal officials in the District of Columbia and Governors and state legislative leaders in Arizona, Georgia, Michigan, Pennsylvania and Wisconsin ("Defendant States") requiring a constitutionally-compliant process for state-by-state post-election certification of Presidential electors and counting of their votes for the November 3, 2020 Presidential election and future elections.

## ARGUMENT

The Plaintiffs as voters file this motion for preliminary injunction against federal officials in the District of Columbia and Governors and state legislative leaders in Arizona, Georgia, Michigan, Pennsylvania and Wisconsin ("Defendant States") seeking a constitutionally-compliant process for state legislative post-election certification of Presidential electors and counting of their votes prior to the Presidential and Vice Presidential inaugural on January 20, 2021.

Under Article II's imperative sentence regarding Presidential elections, Congress lacks legal authority to enact laws interfering with the state-by-state state legislative post-election certification of Presidential electors as it has done with 3 U.S.C. §§ 5, 6 and 15.  Analogously, under Article II's imperative sentence regarding Presidential elections, the state legislatures lack legal authority to enact state laws which are a perpetual and wholesale delegation of post-election certification to state executive branch officials—as they have done in Ariz. Rev. Stat. § 16-212 (B) (Arizona Secretary of State), Ga. Code Ann.§ 21-2-499 (B) (Georgia Secretary of State and Governor), Mich. Comp. Laws § 168.46 (Michigan State Board of Canvassers and Governor), Wis. Stat. § 7.70 (5) (b) (Wisconsin Elections Commission); and 25 Pa. Cons. Stat.   § 3166 (Secretary of Commonwealth and Governor). Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, left it to the state legislatures to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. Under Article II's imperative sentence regarding Presidential elections, if there is no state legislative post-election certification of Presidential electors in the Defendant States, then those Defendant States' Presidential electors' votes, not so certified, cannot

be counted by the federal Defendants for the election of President and Vice President. So, the preliminary injunction should issue to require constitutional compliance.[7]

## I.       The D.C. Circuit applies a four-part test for granting a preliminary injunction.

A party seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C.Cir.2014) (*quoting Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C.Cir.2011)) (emphasis in text deleted). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*quoting* 11A C. Wright, A. Miller, & M. Kane, Federal Practice And Procedure § 2948 (2d ed.1995)) (emphasis in original).

## II.       The Plaintiffs are likely to succeed on the merits.

The Plaintiffs are likely to succeed on the merits. The D.C. Circuit has, in the past, followed the "sliding scale" approach to success on the merits, where "a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). Under the sliding scale approach, "if the movant makes a very strong showing of irreparable harm and there is no substantial harm to the nonmovant, then a correspondingly lower standard can be applied for likelihood of success." *Davis v. Pension Ben. Guar. Corp.,* 571 F.3d 1288, 1292 (D.C.Cir.2009).

---

[7] For a review of the constitutional convention's deliberations on selecting the president, see Neal R. Peirce and Lawrence D. Longley, *The People's President: The Electoral College in American History and the Direct Vote Alternative* (1968; New Haven, 1981) at 10-30.

**A.**     **Federal law—3 U.S.C. §§ 5, 6, 15—and the state laws—Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann. § 21-2-499 (B), Mich. Comp. Laws. § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.  § 3166—are constitutionally unauthorized and they violate voters' rights to state legislative post-election certifications.**

The plaintiffs have voting rights under Article II guaranteeing state legislative post-election certification of their votes and of Presidential electors. *See Baten v. McMaster*, 967 F.3d 345, 352–53 (4th Cir. 2020) (voters who vote in Presidential elections have standing on claims of government causing disenfranchisement).  3 U.S.C. §§ 5, 6, 15, Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166 are constitutionally unauthorized.  The federal and state laws violate voters' rights by preempting state legislative post-election certification of their Presidential votes and post-election certification of the Presidential electors. 3 U.S.C. §§ 5, 6, 15 also unconstitutionally allow counting of votes of Presidential electors who have not received the constitutionally-required state legislative post-election certification.

**1.**     **Voter rights are guaranteed under Article II to the state legislatures' post-election certifications of their votes and of Presidential electors.**

Article II guarantees to voters that the state legislature will vote on post-election certification of votes and post-election certification of Presidential electors and that only ballots of legislatively-certified Presidential electors will be counted for the election of President and Vice President. *See Baten v. McMaster*, 967 F.3d at 352–53 (4th Cir. 2020).  It is part of the social contract embedded in the Constitution.

Specifically, Article II provides that the state legislature—not Congress, nor the Governors—shall be the deciding body for Presidential electors:

> He shall hold his office during the term of four years, and, together with the Vice President, chosen for the same term, be elected, as follows:  Each state shall appoint, in such manner as the Legislature thereof may direct, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled

in the Congress: but no Senator or Representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.

Under Article II and the Tenth Amendment, the state legislatures' power to determine the manner of appointment of Presidential electors includes the power of post-election certification. Moreover, the state legislatures' choice for elections as the manner to appoint Presidential electors does not abrogate nor diminish the state legislatures' constitutional obligations to conduct post-election certification of their respective Presidential electors.

> **2.** **Article II's imperative sentence regarding Presidential elections requires that only the votes of Presidential electors who have received state legislative post-election certification count toward election of President and Vice President.**

The purpose of Article II's imperative sentence regarding Presidential elections is for state legislatures to certify voters' Presidential votes in order to certify Presidential electors who cast ballots for President and Vice President—which are opened and counted by the federal Defendants. The voters in the Presidential elections are constitutionally-guaranteed that the state legislature, after the election, will certify their vote and, based on the Presidential vote returns, certify the Presidential electors. All Presidential election contests are to be heard by the state legislatures—not the federal courts nor the state courts. The constitutional protection of the state legislatures' constitutional prerogatives over selection of Presidential electors is that the Federal Defendants can only count the votes of the Presidential electors who have state legislative post-election certification; otherwise, constitutionally, the votes of Presidential electors without state legislative post-election certification do not count.

3 U.S.C. §§ 5, 6, 15, Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166 are also constitutionally unauthorized because the Federal Defendants count votes of Presidential electors who do not have state legislative post-election certification. The federal laws and state laws authorize

an unconstitutional method for electing the President and Vice President.  Because the federal laws are not constitutionally authorized, the threat of a post-inaugural ouster under D.C. Code 16-3501, et seq., is legally imminent.

### 3. 3 U.S.C. §§ 5, 6 and 15 fail to constitutionally guarantee state legislative post-election certifications of votes and of Presidential electors.

3 U.S.C. §§ 5, 6 and 15 constitute significant federal regulation of the state appointment of Presidential electors and counting their votes for President and Vice President. Meanwhile, these federal laws fail to guarantee state legislative certifications of votes and of Presidential electors. Sections 5 and 6 set a deadline for the state executive branch officials and judges of December 8, 2020, to determine election controversies as to appointment of electors and designates the Governor of each state to communicate the appointment of the Presidential electors to the federal government. Section 5 sets the deadline as six days before the Electors meet to vote which was December 14, 2020:

> If any State shall have provided, by laws enacted prior to the day fixed for the appointment of the electors, for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State, by judicial or other methods or procedures, and such determination shall have been made at least six days before the time fixed for the meeting of the electors, such determination made pursuant to such law so existing on said day, and made at least six days prior to said time of meeting of the electors, shall be conclusive, and shall govern in the counting of the electoral votes as provided in the Constitution, and as hereinafter regulated, so far as the ascertainment of the electors appointed by such State is concerned.

Section 6 designates the Governors, the executives of the states, to be the public officials to exclusively communicate the list of Presidential electors and their votes to the federal government:

> It shall be the duty of the executive of each State, as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment, to communicate by registered mail under the seal of the State to the Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast; and it shall also thereupon be the duty of the

executive of each State to deliver to the electors of such State, on or before the day on which they are required by section 7 of this title to meet, six duplicate-originals of the same certificate under the seal of the State; and if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination in form and manner as the same shall have been made; and the certificate or certificates so received by the Archivist of the United States shall be preserved by him for one year and shall be a part of the public records of his office and shall be open to public inspection; and the Archivist of the United States at the first meeting of Congress thereafter shall transmit to the two Houses of Congress copies in full of each and every such certificate so received at the National Archives and Records Administration.

Section 15 contains procedures for the Vice President of the United States as President of the Senate, the U.S. Senate and the U.S. House of Representatives to meet on January 6 following the Presidential election and for counting the Presidential electors' votes from the respective states. There is nothing in section 15 stating that only the ballots of Presidential electors who have received state legislative post-election certification will be counted:

Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the Hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and the President of the Senate shall be their presiding officer. Two tellers shall be previously appointed on the part of the Senate and two on the part of the House of Representatives, to whom shall be handed, as they are opened by the President of the Senate, all the certificates and papers purporting to be certificates of the electoral votes, which certificates and papers shall be opened, presented, and acted upon in the alphabetical order of the States, beginning with the letter A; and said tellers, having then read the same in the presence and hearing of the two Houses, shall make a list of the votes as they shall appear from the said certificates; and the votes having been ascertained and counted according to the rules in this subchapter provided, the result of the same shall be delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States, and, together with a list of the votes, be entered on the Journals of the two Houses.

Thus, none of these federal laws—3 U.S.C. §§ 5, 6 and 15—guarantee state legislative post-election certification of Presidential electors before their votes are counted.

17

4.       **Congress lacks Congressional authority to enact 3 U.S.C. §§ 5, 6 and 15 which preempt constitutionally-mandated state legislative post-election certification of Presidential electors, violating voting rights related thereto.**

Two legal standards cover cases challenging Congress's constitutional authority to enact statutes. The first legal standard applies when the party claims an Act of Congress is not authorized by one of the powers delegated to Congress in Article I of the Constitution. See, *e.g., Perez v. United States,* 402 U.S. 146 (1971); *McCulloch v. Maryland,* 17 U.S. 316 (1819).

The second legal standard applies when the party claims an Act of Congress invades the province of state sovereignty granted by an express constitutional provision or reserved by the Tenth Amendment. See, *e.g., Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985); *Lane County v. Oregon,* 74 U.S. 71 (1869). "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." *New York v. U.S.,* 505 U.S. 144, 156 (1992) (citations omitted). It is in this sense that the Tenth Amendment "states but a truism that all is retained which has not been surrendered." *United States v. Darby,* 312 U.S. 100, 124 (1941).

The Plaintiffs here assert that the 3 U.S.C. §§ 5, 6, 15 is both constitutionally unauthorized and 3 U.S.C. §§ 5, 6, 15 invades the state legislature's power to post-election certifications of Presidential votes and Presidential electors granted by Article II and reserved by the Tenth Amendment. So, both legal standards apply.

a.   **The textualist argument supports that the state legislatures, not Governors must conduct post-election certifications of Presidential votes and of Presidential electors.**

One Congressional researcher has defined judicial textualism:

Textualism is a mode of interpretation that focuses on the plain meaning of the text of a legal document. Textualism usually emphasizes how the terms in the Constitution would be understood by people at the time they were ratified, as well as the context in

which those terms appear. Textualists usually believe there is an objective meaning of the text, and they do not typically inquire into questions regarding the intent of the drafters, adopters, or ratifiers of the Constitution and its amendments when deriving meaning from the text.[8]

The textualist argument supports that the state legislatures, not Governors, must conduct post-election certification of Presidential votes and post-election certification of Presidential electors.

The textualist argument in this memorandum is based on one sentence in Article II of the U.S. Constitution. The sentence has eighty-five words. The constitutional sentence provides:

> He shall hold his office during the term of four years, and, together with the Vice President, chosen for the same term, be elected, as follows: Each state shall appoint, in such manner as the Legislature thereof may direct, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.

The Plaintiffs claim, based on this sentence, that post-election certification of Presidential votes and post-election certification of Presidential electors are state legislative decisions. In turn, the Plaintiffs claim that 3 U.S.C. § 5, 6 and 15 and state laws (such as Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166) eviscerating these state legislative prerogatives, every four years, are unconstitutional.

Several textualist interpretative keys open up the relevant meanings of the constitutional text as interpreted by Plaintiffs. First, the constitutional sentence is an imperative sentence. Second, the imperative sentence requires the election of President and Vice President every "four years." Third, every four years, the "state" appoints the Presidential electors. Fourth, every four years, "the legislature may "direct" the "manner" of appointing.

The constitutional sentence is an imperative sentence requiring that the President and Vice President "be elected" "every four years."   The sentence phrase "as follows" provides specific

---

[8]Brandon J. Murrill, "Modes of Constitutional Interpretation" at 2, Congressional Research Service (Mar. 15, 2018).

directions on how the Presidential election is to occur.  This imperative sentence is an instruction to all constitutional actors identified—President, Vice President, U.S Congress, Presidential electors, states and state legislatures—and those not identified—Governors, federal judiciary and state judiciaries.

The Plaintiffs focus on the imperative nature of the constitutional sentence to make their texualist interpretation.  To begin, the imperative sentence, in relevant part, requires that the all the constitutionally-identified actors—President, Vice President, U.S Congress, Presidential electors, states and state legislatures— conduct an election of President and Vice President every "four years."  This interpretation can hardly be disputed since that is what the text says.  And, ever since its adoption, the United States has conducted, every four years, an election for President and Vice President.  Consistently, the challenged federal and state laws—3 U.S.C. § 5, 6 and 15 and Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166)—all presume a Presidential election every four years.

Next, the imperative constitutional section requires that, every four years, the "state" appoints the Presidential electors. This interpretation also can also hardly be disputed since that is what the text says.  And, ever since its adoption, the states, every four years, have appointed Presidential electors for the purpose of electing a President and Vice President.  Consistently, the challenged federal and state laws--3 U.S.C. § 5, 6 and 15 and Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166)—presume that the states, every four years, appoint Presidential electors for the purpose of electing a President and Vice President.

Finally, the imperative constitutional section requires that, every four years, "the legislature" may "direct" the "manner" of appointing of the Presidential electors.  Plaintiffs claim that it is this aspect of the constitutional imperative sentence that is violated when the challenged federal and

state laws--3 U.S.C. § 5, 6 and 15 and Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B),

Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166)—legally

preclude state legislative post-election certification of Presidential votes and post-election

certification of Presidential electors.  Plaintiffs claim that, every four years, "the legislature must be

involved in such post-election certification so that it may "direct" the "manner" of "appoint[ing]" of

the Presidential electors—as the constitutional imperative sentence requires.

 To be sure, in the previous sentence of this memorandum, the "-ing" at the end of

"appoint[ing]" is in brackets because the word "appoint" is in the constitutional text not the word

"appointing."  To explain, please engage in a thought experiment sympathetic to Plaintiffs'

position.  Substitute "engage in appointing" for "appoint" in the constitutional sentence. Such

substitution does not change the meaning of that part of the constitutional sentence.  The phrase

"every four years, the state shall appoint" has the same meaning as "every four years, the state shall

engage in appointing."  However, such a substitution does confirm Plaintiffs' constitutional

argument.  The substitution does not contradict any other part of the constitutional imperative

sentence. The state legislature, every four years, may direct the manner of the state engaging in

appointing the Presidential electors.  So, the state legislatures, every four years, applies their

respective parliamentary rules to the state appointments of Presidential electors. The federal laws

and state laws which contradict with the state legislatures' quadrennial prerogatives are

constitutionally unauthorized.

 To be balanced, a similar thought experiment sympathetic to the opposition should be

tried.  Now, substitute the phrase "have laws regarding appointment" for "appointment" in the

constitutional sentence.  Quickly, two contradictions arise.  First, the first part of sentence "[The

President] shall hold his office during the term of four years, and, together with the Vice President,

chosen for the same term, be elected, as follows." So, state laws contradict with the phrase that the

states "have laws regarding appointment." The contradiction is that the constitutional imperative sentence is the exclusive law requiring that every four years the Presidential elections shall occur "as follows"; so, state laws "directing" the "manner" of "appointing" the Presidential electors are constitutionally unauthorized.  Second, the later part of the sentence "in such manner as the Legislature thereof may direct" contradicts "have laws regarding appointment."  The contradiction is that the constitutional imperative sentence is the exclusive law requiring that every four years the Presidential elections shall occur "as follows" including the state legislature "may" "direct" the "manner" of "appointing" the Presidential electors. So, state laws "directing" the "manner" of "appointing" the Presidential electors are constitutionally unauthorized.  Specifically, the challenged federal laws and state laws requiring Governor post-election certification of Presidential electors, currently considered as having full legal force and effect, have the legal consequence that the state legislatures, every four years, "may" NOT "direct" the "manner" of "appointing" the Presidential electors.  Again, the state legislatures, not the Governors, have the constitutional prerogatives for post-election certification.

> **b.   The textual argument supports that 3 U.S.C. §§ 5, 6 and 15 are unconstitutional.**

The textual argument for unconstitutionality of 3 U.S.C. §§ 5, 6 and 15 is straightforward.[9] Under textualism, the Constitution's text supports that the unconstitutionality of 3 U.S.C. §§ 5, 6 and 15 because they fail to guarantee voter's rights to the state legislature's post-election certifications of Presidential votes and of Presidential electors to vote for President and Vice President.

Congress neither has express constitutional authority nor implied constitutional authority to enact 3 U.S.C. §§ 5, 6 and 15. Further, the federal laws violate voter's rights in Presidential elections

---

[9] *See, generally,* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional*, 80 N.C. L. Rev. 1653, 1696-1759 (2002).

because they interfere with state legislative post-election certifications of Presidential votes and Presidential electors and that only the votes of such certified Presidential electors may be counted in the election of President and Vice President.

First, Congress has no express constitutional authority to enact 3 U.S.C. §§ 5, 6 and 15 which regulate state appointment of Presidential electors and regulate counting Presidential elector votes to elect a President and Vice President. Article II puts state appointment of Presidential electors in the exclusive hands of the state legislatures every four years, "Each state shall appoint, in such manner as the Legislature thereof may direct." By contrast, Article II lacks the express grant of authority to Congress in Article I's Elections Clause for Congressional elections:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

There, the Constitution provides a power to Congress "to make or alter such [state] Regulations" by state in Article I. But, that Constitutionally-conferred power is absent in Article II.

Lacking express constitutional authority in Article II's imperative sentence regarding Presidential elections, the only alternative for Congressional authority is an implied constitutional authority. The only candidates for the government's implied constitutional authority would be Article I's the Necessary and Proper Clause and Article II itself.

The first candidate for implied Congressional authority is the Necessary and Proper Clause. The Necessary and Proper Clause provides that Congress shall have power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." A careful parsing of the Necessary and Proper Clause reveals that there are three prongs of power. Under the Clause, Congress has power for carrying into execution (1) "the foregoing Powers," (2) "all other Powers vested by this Constitution in the Government of the

United States," and (3) "all other Powers vested by this Constitution... in any Department or Officer thereof." None of these prongs support the constitutionality of 3 U.S.C. §§ 5, 6 and 15.

First, the phrase "foregoing Powers" refers to the enumerated powers of Article I. None of the enumerated Congressional powers in Article I cover the appointment of and voting by Presidential electors—which is covered by Article II. So, the "foregoing powers" requirement is not satisfied.

Second, the phrase "all other Powers vested by this Constitution... in any Department or Officer thereof" does not include Congress or Congressional members. Congress is not a Department. Members of Congress are not Officers. In fact, Congressional members are subject to impeachment by the House of Representatives and conviction by the Senate because they are not "civil Officers of the United States." *See* U.S. Const., art. II, § 4 ("The President, Vice President, and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors."). Furthermore, the Ineligibility Clause of Article I, Section 6 provides that "no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office." So the phrase "all other Powers vested by this Constitution... in any Department or Officer thereof" is not satisfied.

Third, the phrase "all other Powers vested by this Constitution... in any Department or Officer thereof" does not apply because the U.S. Congress is not a Department or Officer. The text of Article II's imperative sentence regarding Presidential elections does not employ the word "power" referencing to Congress. Article II's imperative sentence regarding Presidential elections does not vest "power" in Congress over state legislatures' express power to determine the manner of appointment of Presidential electors every four years, including the post-election certification of

Presidential electors. Therefore, the phrase "all other Powers vested by this Constitution... in any Department or Officer thereof" is not satisfied.

The second candidate for implied constitutional authority is Article II itself. But, similarly, Article II supports that it is the state legislatures' exclusive constitutional prerogative to determine the state's appointment of Presidential electors, including post-certification of the Presidential electors to vote for President and Vice President. Article II's imperative sentence regarding Presidential elections and the Twelfth Amendment do not grant Congress any "power" over the state legislatures' constitutional prerogatives over Presidential electors. Instead, these constitutional texts define a very limited and specific role for the Vice President, U.S. Senate and U.S. House of Representatives.

Congress's enactment of 3 U.S.C. §§ 5, 6 and 15 goes far beyond the constitutionally-prescribed roles for Vice President, U.S. Senate and the U.S. House of Representatives in Article II's imperative sentence regarding Presidential elections and the Twelfth Amendment. So, Article II's imperative sentence regarding Presidential elections and the Twelfth Amendment do not provide an implied constitutional authority for 3 U.S.C. §§ 5, 6 and 15.

Additionally, there is a textualist argument based on the negative implication. When the Constitution provides Congressional power regarding the Presidency, it says so—twice. First, Article II, Section 1, Clause 4 which provides that "[t]he Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States." Second, the Presidential Succession Clause of Article II provides that:

> [i]n Case of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Powers and Duties of the said Office, the Same shall devolve on the Vice President, and the Congress may by Law provide for the Case of Removal, Death, Resignation or Inability, both of the President and Vice President, declaring what Officer shall then act as President, and such Officer shall act accordingly, until the Disability be removed, or a President shall be elected.

In both of these instances, the Constitution provides Congress with express authority over a limited, narrowly-prescribed aspect of Presidential elections. By negative implication, then, Article II's imperative sentence regarding Presidential elections and selection of Presidential electors every four years does not provide implied constitutional authority for Congress to regulate the state legislatures' post-election certifications of Presidential votes and of Presidential electors.

Finally, the constitutional text also provides an intertextual argument. When the Constitution provides a Congressional role in election, the Constitution says so. First, Article I's Elections Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." Second, The House Judging Clause provides that "[e]ach House shall be the Judge of the Elections, Returns and Qualifications of its own Members." In both instances, the Constitution provides Congress with express constitutional authority regarding elections involving Congress. However, regarding Presidential electors, there is constitutional silence—no express power is granted to Congress—because Article II empowers the state legislatures, exclusively, to govern the states' appointments of Presidential electors.

   c.  **Structuralist arguments also support that 3 U.S.C. §§ 5, 6 and 15 are unconstitutional.**

The interpretivist's structuralist arguments[10] also support the unconstitutionality of 3 U.S.C. §§ 5, 6 and 15.[11] One Congressional researcher has defined judicial structuralism:

> Another mode of constitutional interpretation draws inferences from the design of the Constitution: the relationships among the three branches of the federal government (commonly called separation of powers); the relationship between the federal and state

---

[10] *See, generally,* Charles L. Black, Jr., Structure And Relationship In Constitutional Law (1969); Philip Bobbit, Constitutional Fate: Theory Of The Constitution 74-92 (1982).

[11] *See, generally,* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional*, 80 N.C. L. Rev. 1653, 1759-1793 (2002).

governments (known as federalism); and the relationship between the government and the people.[12]

The structure of Article II is to empower the state legislatures, not Congress or the state's Governors, to appoint the Presidential electors. 3 U.S.C. §§ 5, 6 and 15 violate Article II's structure because they empower Congress and the state's Governors in the Presidential elector process— excluding the state legislatures from the Presidential elector certification process.

The structure of the Article II for Presidential elections is anti-Congress, anti-Governors and pro-state legislatures. Article II's imperative sentence regarding Presidential elections puts the state legislatures in exclusive control of a state's appointment of Presidential electors. The state legislatures, who enact the state elections law applicable to federal elections, are identified to choose the manner of appointment of the Presidential electors. Congress and the Governors are to have no substantive role in the procedures of certifying Presidential electors to vote for President and Vice President. The Federal Defendants are just there to count the Presidential electors' votes of the Presidential electors who have received state legislative post-election certification.

Article II contains an anti-Congress principle, anti-Governors principle and a pro-state legislatures principle. These principles should be brought to bear on any interpretation of Article II and 3 U.S.C. §§ 5, 6 and 15. If these principles are applied, 3 U.S.C. §§ 5, 6 and 15 is constitutionally unauthorized.

### 1)   The Anti-Congress Principle

The Constitution mistrusts Congress in Presidential elections. This is the anti-Congress principle of Article II. Congress is to have a limited, narrowly-prescribed role in Presidential

---

[12] Brandon J. Murrill, "Modes of Constitutional Interpretation" at 2, Congressional Research Service (Mar. 15, 2018).

elections. Congress is not to interfere with the state legislature directing the appointment of Presidential electors. Congress is not trusted in Article II.

First, Article II's electoral college method of selecting a President and Vice President is a rejection of Congressional decision-making. The Constitution replaced the Articles of Confederation which authorized Congress to elect a President of the United States in Congress assembled— parliamentary style. Under the Articles of Confederation, John Hanson was the first President of the United States in Congress Assembled and served from November 5, 1781 to November 4, 1782. The Constitution replaced that parliamentary system with the Electoral College based on the anti-Congress principle of Article II. Article II prohibits Congress selecting the President.

Second, Article II's Elector Incompatibility Clause, stating that "no Senator or Representative, or Person holding an Office or Trust of Profit under the United States, shall be appointed as an Elector," is a rejection of Congressional decision-making. The relevant purpose of the Elector Incompatibility Clause is to absolutely separate the Presidential electors from Congress. The Presidential electors are to be independent from Congress.

### 2) The Anti-Governors Principle

The Constitution mistrusts Governors in Presidential elections. This is the anti-Governors principle of Article II. The Governors are to have no role in Presidential selection. The states' Governors are not trusted in Article II. Article II's electoral college method of selecting a President and Vice President empowers the state legislatures, not the Governors.

First, Article II's imperative sentence regarding Presidential elections specifies "state legislatures"—not Governors nor "state executives'—to have the power over the appointment of Electors:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress…

28

So, one of the purposes of Article II's imperative sentence regarding Presidential elections was to exclude the states' Governors from having a role in Presidential elections.

Second, the Electors Clause specifies that the Presidential electors are to vote in their states and the Vice President and Congress, not the State's Governors, would open and count the Presidential electors' ballots for President and Vice President:

> The Electors shall meet in their respective States, and vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted.

One of the purposes of the Electors Clause was also to exclude the states' Governors from having a role in opening and counting the Presidential electors' ballots.

### 3) The Pro-State Legislatures Principle

The Constitution trusts state legislatures in Presidential elections. This is the pro-state legislatures principle of Article II. The state legislatures, not Congress nor the states' Governors, are to direct the selection of Presidential electors. Article II trusts state legislatures to choose Presidential electors—even trusting them to directly elect them as was done by some state in the 1800's.[13]

First, Article II's imperative sentence regarding Presidential elections empowers "state legislatures"—not Congress, nor the State's Governors—to have the power over the appointment of Presidential electors:

> He shall hold his office during the term of four years, and, together with the Vice President, chosen for the same term, be elected, as follows:  Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to

---

[13] *See, e.g.,* Georgia Constitution of 1798, Art. IV, sec. 2 (http://founding.com/founders-library/government-documents/american-state-and-local-government-documents/state-constitutions/georgia-constitution-of-1798/) (last visited: Dec. 18, 2020).

the whole Number of Senators and Representatives to which the State may be entitled
in the Congress…

So, one of the purposes of Article II's imperative sentence regarding Presidential elections was to

empower state legislatures to appoint the Presidential electors.

Second, the Electors Clause specifies that the Presidential electors are to vote in their states

and specifies the Vice President and Congress will have limited, defined roles of opening and

counting the Presidential electors' ballots for the election of President and Vice President:

The Electors shall meet in their respective States, and vote by Ballot for two Persons,
of whom one at least shall not be an Inhabitant of the same State with themselves.
And they shall make a List of all the Persons voted for, and of the Number of Votes
for each; which List they shall sign and certify, and transmit sealed to the Seat of the
Government of the United States, directed to the President of the Senate. The
President of the Senate shall, in the Presence of the Senate and House of
Representatives, open all the Certificates, and the Votes shall then be counted.

One of the purposes of the Electors Clause was to limit and define the Vice President's and

Congress's role in the Electoral College process to ensure that the state legislature would have the

exclusive power to appoint the Presidential electors.

**4) Conclusion**

Structuralist arguments based on Article II support the unconstitutionality of 3 U.S.C. §§ 5, 6

and 15. Article II contains an anti-Congress principle, an anti-Governors principle and a pro-state

legislatures principle. The structure of Article II is to empower the state legislatures, not Congress or

the Governors, to appoint the Presidential electors. 3 U.S.C. §§ 5, 6 and 15 violate Article II's

structure because they empower Congress and the state's Governors in the Presidential elector

certification and counting process—cancelling the state legislatures out of the Presidential

certification and subsequent counting process.

5. **The Defendant States violate Article II by their respective constitution and their respective state laws—Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann. § 21-2-499 (B), Mich. Comp. Laws. § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat. § 3166—by cancelling state legislatures out of post-election certifications of Presidential votes and of Presidential electors.**

Under Article II's imperative sentence regarding Presidential elections, the Defendant States lack congressional authority to enact state laws which cancel their respective state legislatures out of post-election certifications of Presidential votes and of Presidential electors—as they have done. Arizona in Ariz. Rev. Stat. § 16-212 (B) has delegated post-election certifications to the Arizona Secretary of State. Georgia in Ga. Code Ann.§ 21-2-499 (B) has delegated post-election certifications to the Georgia Secretary of State and Governor. Michigan in Mich. Comp. Laws § 168.46 has delegated post-election certifications to the Michigan State Board of Canvassers and the Governor. Wisconsin in Wis. Stat. § 7.70 (5) (b) has delegated post-election certifications to the Wisconsin Elections Commission. Pennsylvania in 25 Pa. Cons. Stat. § 3166 has delegated post-election certifications to the Secretary of Commonwealth and the Governor.

But, Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, empowers the state legislatures, every four years, to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. As detailed above, there are textual and structural arguments for these state statutes being unconstitutional. Therefore, the Court should hold Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b), 25 Pa. Cons. Stat. § 3166 as an unconstitutional delegation of the state legislative prerogative of post-election certification of Presidential voters.

Notably, even the current state constitutions of the Defendant States fail to require the state legislature to meet for post-election certification of the Presidential electors in violation of state legislative constitutional duties under Article II's imperative sentence regarding Presidential

elections.  Arizona's, Georgia's and Pennsylvania's Constitutions have the state legislature adjourned until January 2021. Arizona Const.; Georgia Const.; Pennsylvania Const.  Michigan's and Wisconsin's Constitutions permit the state legislature to be in session, but do not require a joint session of the state legislature to affirmatively vote for post-election certification of Presidential electors. Michigan Const.; Wisconsin Const.

> **a.  The Arizona Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights.**

The Arizona Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. Under Article II's imperative sentence regarding Presidential elections, Arizona lacks legal authority to enact laws which are a perpetual and wholesale delegation of post-election certification to state executive branch officials—as it has done. Arizona in Ariz. Rev. Stat. § 16-212 (B) has delegated certification of Presidential electors to the Arizona Secretary of State—and has deferred to the Arizona Governor's certification of Presidential electors under 3 U.S.C. § 6.

But, Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, empowers the Arizona state legislature to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. As detailed above, there are textual and structural arguments for these state statutes being unconstitutional. Therefore, the Court should find that the Arizona Constitution and Arizona laws, including Ariz. Rev. Stat. § 16-212 (B), are an unconstitutional delegation of the Article II state legislative prerogatives of post-election certification of Presidential votes and post-election certification of Presidential electors.

**b. The Georgia Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights.**

The Georgia Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. Under Article II's imperative sentence regarding Presidential elections, Georgia lacks legal authority to enact state laws which are a perpetual and wholesale delegation of post-election certification to state executive branch officials—as it has done. Georgia in Ga. Code Ann.§ 21-2-499 (B), has delegated certification of Presidential electors to the Georgia Secretary of State and the Georgia Governor—consistent with the Georgia Governor's certification of Presidential electors under 3 U.S.C. § 6.

But, Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, empowers the Georgia state legislature to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. As detailed above, there are textual and structural arguments for these state statutes being unconstitutional. Therefore, the Court should find that the Georgia Constitution and Georgia laws, including Ga. Code Ann.§ 21-2-499 (B), are an unconstitutional delegation of the Article II state legislative prerogatives of post-election certification of Presidential votes and post-election certification of Presidential electors.

**c. The Michigan Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights.**

The Michigan Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. Under Article II's imperative sentence regarding Presidential elections, Michigan lacks legal authority to enact state laws which are a perpetual and wholesale delegation of

post-election certification to state executive branch officials—as it has done. Michigan in Mich. Comp. Laws § 168.46 has delegated certification of Presidential electors to Michigan State Board of Canvassers and Michigan Governor—consistent with the Michigan Governor's certification of Presidential electors under 3 U.S.C. § 6.

But, Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, empowers the Michigan state legislature to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. As detailed above, there are textual and structural arguments for these state statutes being unconstitutional. Therefore, the Court should find that the Michigan Constitution and Michigan laws, including Mich. Comp. Laws § 168.46, are an unconstitutional delegation of the Article II state legislative prerogatives of post-election certification of Presidential votes and post-election certification of Presidential electors.

d. **The Pennsylvania Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights.**

The Pennsylvania Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. Under Article II's imperative sentence regarding Presidential elections, Pennsylvania lacks legal authority to enact state laws which are a perpetual and wholesale delegation of post-election certification to state executive branch officials—as it has done. Pennsylvania in 25 Pa. Cons. Stat.   § 3166 has delegated certification of Presidential electors to the Secretary of Commonwealth and the Pennsylvania Governor—consistent with the Pennsylvania Governor's certification of Presidential electors under 3 U.S.C. § 6.

But, Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, empowers the Pennsylvania state legislature to "direct" post-election certification of

Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. As detailed above, there are textual and structural arguments for these state statutes being unconstitutional. Therefore, the Court should find that the Pennsylvania Constitution and Pennsylvania laws, including 25 Pa. Cons. Stat.  § 3166, are an unconstitutional delegation of the Article II state legislative prerogatives of post-election certification of Presidential votes and post-election certification of Presidential electors.

e. **The Wisconsin Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights.**

The Wisconsin Constitution and laws do not require state legislative post-election certification of Presidential electors so their votes can be constitutionally counted by the federal Defendants—violating voters' rights. Under Article II's imperative sentence regarding Presidential elections, Wisconsin lacks legal authority to enact state laws which are a perpetual and wholesale delegation of post-election certification to state executive branch officials—as it has done. Wisconsin in Wis. Stat. § 7.70 (5) (b) has delegated certification of Presidential electors to the Wisconsin Elections Commission—and has deferred to the Arizona Governor's certification of Presidential electors under 3 U.S.C. § 6.

But, Article II's imperative sentence regarding Presidential elections, and its non-delegation doctrine, empowers the Wisconsin state legislature to "direct" post-election certification of Presidential electors, not to delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials as a ministerial duty. As detailed above, there are textual and structural arguments for these state statutes being unconstitutional. Therefore, the Court should find that the Wisconsin Constitution and Wisconsin laws, including Wis. Stat. § 7.70 (5) (b), are an unconstitutional delegation of the Article II state legislative prerogatives of post-election certification of Presidential votes and post-election certification of Presidential electors.

**6.    The Presidential post-election court proceedings—like *Bush v. Gore,* the Texas original action and the thirty post-election lawsuits in Defendant States—are in constitutional error and unnecessarily politicize the federal and state courts.**

The Presidential post-election court proceedings—like *Bush v. Gore,* the Texas original action and the thirty post-election lawsuits in Defendant States—are in constitutional error and unnecessarily politicize the federal and state courts.  Under Article II, all of those cases should be dismissed for lack of jurisdiction—and the plaintiffs should be instructed to file their election contests with their respective state legislatures.  The Defendant States have election contest or recount laws, which apply to Presidential elections, but preclude state legislative certifications:  Ariz. Rev. Stat. § 16-672; Ga. Code Ann.§ 21-2-521; Mich. Comp. Laws § 168.862; Wis. Stat. § 9.01; and 25 Pa. Cons. Stat.  § 3351. Interestingly, the Pennsylvania laws have a state legislative post-election certification process for its Governor and Lieutenant Governor elections—but not for President and Vice President. 25 Pa. Cons. Stat.  § 3312, et seq.  The Defendant States' laws precluding state legislative post-election certification in Presidential election contests and recounts violates Article II.

**III.    The Plaintiffs have standing as voters because the Defendants are violating their voting rights to state legislative post-election certifications of their votes and of Presidential electors and to only the votes of Presidential electors so certified being counted toward the election of President and Vice President.**

As voters, the Plaintiffs have legal standing to bring these constitutional claims to ensure that Presidential elections are constitutionally conducted by Defendants. Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process."[5] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013). To establish Article III standing, a

plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan, supra,* at 560–561 (internal quotation marks omitted). Pre-enforcement constitutional challenges must meet the same standing requirements. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014).

The U.S. Court of Appeals for the Fourth Circuit recognized standing in *Baten v. McMaster*, 967 F.3d 345, 352–53 (4th Cir. 2020) for Plaintiffs alleging their votes for Democratic presidential candidates were, in effect, discarded under South Carolina's winner-take-all process. *Id, citing Gill v. Whitford*, —— U.S. ——, 138 S. Ct. 1916, 1920–21 (2018) (citing *Baker v. Carr*, 369 U.S. 186, 206 (1962)) (contrasting the individual harm felt by a voter who casts his ballot in a gerrymandered district with the "generalized grievance" of one who disapproves of gerrymandering in his state but does not live in a gerrymandered district). The Fourth Circuit held this type of disenfranchisement "is the type of concrete, particularized injury that Article III contemplates." *Id.* at 353.

Similarly, the Plaintiffs claim they have been disenfranchised.  The Plaintiffs claim that Article II of the U.S. Constitution provides a voter a constitutional right to the voter's Presidential vote being certified as part of the state legislature's post-election certification of Presidential electors. Absence such certification, the Presidential electors' votes from that state cannot be counted by the federal Defendants toward the election of President and Vice President. Because the Plaintiffs' votes are not counted as part of the constitutionally-required state legislative post-election certification of Presidential electors, the Plaintiffs are disenfranchised.

The Defendants' disenfranchisement of the Plaintiffs' voting rights is that the Plaintiffs' votes are never properly certified by the state legislature, which based on that certification, certifies the Presidential electors whose votes are counted by the federal Defendants to elect the President and Vice President.  The Defendants' disenfranchisement of the Plaintiffs' voting rights is caused by

3 U.S.C. §§ 5, 6, 15, and the Defendants' state constitutions and state laws including Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166.

When Defendants violate the Constitution as it relates to Presidential elections in the Defendant States, all voters in Presidential elections suffer an injury-in-fact caused by the Defendants. Voters in a Presidential election, in this instance, have an injury-in-fact different than the public because they voted and they thus had an interest that the election in which they voted is constitutionally-conducted. The same is true of future elections. Finally, the Court can redress the Plaintiffs' injuries by issuing a declaratory judgment and accompanying injunction to enjoin the Defendants' unconstitutional conduct.

Furthermore, as voters, each Plaintiff has a fundamental right to vote.[14] Thus, each Plaintiff has a recognized protectable interest in voting. As the U.S. Supreme Court has long recognized, a person's right to vote is "individual and personal in nature."[15] Thus, "voters who allege facts showing disadvantage to themselves as individuals have standing to sue" to remedy that disadvantage.[16] "Safeguarding the integrity of the electoral process is a fundamental task of the Constitution, and [the courts] must be keenly sensitive to signs that its validity may be impaired."[17] "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy."[18]

By federal and state election laws, the federal and state governments have agreed to protect the fundamental right to vote by maintaining the integrity of an election contest as fair, honest, and

---

[14] *Reynolds v. Sims,* 377 U.S. 533, 554–55, 562 (1964).
[15] *Id.* 377 U.S. at 561.
[16] *Gill v. Whitford,* 138 S. Ct. 1916, 1929 (2018).
[17] *Johnson v. FCC*, 829 F.2d 157, 163 (D.C. Cir. 1987).
[18] *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006).

38

unbiased to maintain the structure of the democratic process.[19] The voters, in turn, agree to accept the government's announcement of the winner of an election contest, including Presidential elections, to maintain the integrity of the democratic system of the United States. "'No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.'[20] But the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system."[21]

This constitutional arrangement constitutes a "social contract" between the voter and the government as an agreement among the people of a state about the rules that will define their government.[22] Social contract theory provided the background against which the Constitution was adopted. "Because of this social contract theory, the Framers and the public at the time of the revolution and framing conceived governments as resulting from an agreement among people to provide a means for enforcing existing rights."[23] "The aim of a social contract theory is to show that members of some society have reason to endorse and comply with the fundamental social rules, laws, institutions, and principles of that society. Put simply, it is concerned with public justification, i.e., 'of determining whether or not a given regime is legitimate and therefore worthy of loyalty.'"[24]

State legislative post-election certifications of Presidential votes and of Presidential electors is part of the social contract to protect the right to vote. Hence, the right to vote is intertwined with

---

[19] *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 364 (1997) ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."). *See also, e.g.* Plts Amended Compl. ¶¶37–45.

[20] *Burdick v. Takushi,* 504 U.S. 428, 441 (1992) *quoting Wesberry v. Sanders,* 376 U.S. 1, 17 (1964).

[21] *Id.* (citations omitted). *See also, e.g.* Plts Amended Compl. ¶¶46–49.

[22] *Dumonde v. U.S.,* 87 Fed. Cl. 651, 653 (Fed. Cl. 2009) ("Historically, the Constitution has been interpreted as a social contract between the Government and people of the United States," *citing Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 176 (1803). *See e.g.* Plts Amended Compl. ¶50.

[23] Greg Serienko, *Social Contract Neutrality and the Religion Clauses of the Federal Constitution*, 57 Ohio St. L. J. 1263, 1269.

[24] *Contemporary Approaches to the Social Contract,* https://plto.stanford.edu/entries/contractarianism-contemporary/ (last visited Dec. 8, 2020).

the integrity of an election process. The loss of the integrity of the election process renders the right to vote meaningless.[25] Here, the Defendant States' election irregularities and improprieties, including no state legislative post-election certification of Presidential votes and of Presidential electors, so exceed the razor-thin margins in the Defendant States to cast doubt on the razor-thin margins of victory and, thus, threaten the social contract itself.

The Article II social contract with the voters is, in part, the assurance of their state legislatures voting, based on voters' Presidential votes in that state, for post-election certification of Presidential electors. Arising from the social contract is the integrity of the election process to protect the voter's right to vote.

In the Defendant States enacting constitutions and state laws cancelling state legislatures out of post-election certifications of Presidential votes and of Presidential electors, the Defendant states have breached the social contract of Article II.

This social contract, protecting the individual right to vote, is what is personally at risk for the Plaintiffs in the outcome of this controversy. [26] As much as the government has a compelling interest in fair and honest elections with accompanying laws and regulations to ensure that objective to preserve the democratic system of government, so too the voter has an interest against state and local election officials violating the election laws in favor of a pre-determined result. Under the social contract, state legislative post-election certification of the Presidential vote is the voters' remedy against state and local election officials' shenanigans. The Defendant States have unconstitutionally deprived their voters of that remedy in their respective state legislatures.

---

[25] "Legitimacy is the crucial currency of government in our democratic age. Only elections that are transparent and fair will be regarded as legitimate…But elections without integrity cannot provide the winners with legitimacy, the losers with security and the public with confidence in their leaders and institutions."https://www.kofiannanfoundation.org/supporting-democracy-and-elections-with-integrity/uganda-victory-without-legitimacy-is-no-victory-at-all/ (Last visited Dec. 8, 2020).
[26] *Gill,* 138 S.Ct. at 1923.

Furthermore, the voter has a compelling interest in the maintenance of a democratic system of government under the Ninth Amendment through the election process, beyond controversies regarding governmental attempts to interfere with the right to vote. Here, the voter did not enter into a social contract with the Governors and the state and local election officials to give them discretion for state election irregularities and improprieties—and to cancel post-election certifications by the state legislatures—regardless of how benign the public officials might be.

Instead, the voters' social contract is with the state legislatures—which must under Article II conduct post-election certification of all Presidential votes and of the Presidential electors. The Article II requirement of the state legislature casting post-election certification votes is the voters' constitutional "insurance policy" against the risk of Governors and state and local election officials engaging in election irregularities and improprieties in favor of a pre-determined outcome.

The voters have been willing to accept federal and state laws and regulations imposed upon a Presidential election process to serve the government's compelling interest in the integrity of that process. So, while it is fair for the government to create public governmental regulatory schemes to promote the compelling interests to protect the right to vote, and therefore, to protect a voter's right of associational choices under the First Amendment,[27] those rights are infringed when the Defendant States cancel the state legislatures out of post-election certifications of Presidential votes and of the Presidential electors.[28]

For Presidential elections, the Defendant States under Article II have no legal authority to cancel state legislatures out of post-election certifications of Presidential votes and of Presidential electors. Yet, they did. That is the harm for the voters. Article II's imperative sentence regarding Presidential elections that gives voters the right to have their respective state legislatures engage in

---

[27] *Anderson v. Celebrezze,* 460 U.S. 780, 788–89 (1983).
[28] *Id.*

post-election certifications of Presidential votes and of Presidential electors—not Governors nor state or local election officials.

This lawsuit is not about voter fraud. The harm from the federal law—3 U.S.C. §§ 5, 6, 15—and the state laws—including Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann.§ 21-2-499 (B), Mich. Comp. Laws § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat.   § 3166—is the loss of a voter remedy of state legislative post-election certifications required as a core *governmental* function under Article II.

In turn, the Federal Defendants' acceptance of the Presidential electors' votes without state legislative post-election certification of Presidential electors breaches the social contract between the voter and the government—causing more injury to the voter.

Finally, these injuries to the voters are redressable by the Court. For example, the Court could grant the requested preliminary injunction requiring that the federal Defendants on January 6, 2021, only count the votes of Presidential electors if they have received state legislative post-election certification. Otherwise, the votes don't count toward the election of President and Vice President.

## IV.     The Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief.

"Plaintiffs here must at least 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Guttenberg v. Emery*, 26 F.Supp.3d 88, 101 (D.D.C. 2014)(quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)). "Under *Winter*, even a 'strong likelihood of prevailing on the merits' cannot make up for a deficient showing of irreparable injury." *Id.* (quoting *Winter*, 555 U.S. at 21–22). "Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F.Supp.3d 48, 51, n.3 (D.D.C. 2017).

The Plaintiffs' irreparable injury here is the disenfranchisement of Plaintiffs' vote when the Presidential electors' votes are counted without constitutionally-required state legislative post-

election certifications of the Plaintiffs' votes and of the Presidential electors. The federal and state constitutions and laws are a violation of Article II's imperative sentence regarding Presidential elections. Further, without state legislative post-election certification, Plaintiffs will never have their votes counted in the state legislature.

Further, the Plaintiffs will never have the same opportunity to challenge in their state legislatures the election officials' irregularities and illegalities associated with the November 3, 2020 election. Allegedly, the election officials' irregularities and illegalities exceed the razor-thin margins in the Defendant States. Absent the injunction, the Plaintiffs will never have their proverbial "day" in the state legislature to challenge the Presidential election results.

In turn, the Plaintiffs will be subjected to an unlawfully-elected President because none of the Presidential electors received a state legislative post-election certification—as Article II requires.

In the absence of the preliminary injunction, the Plaintiffs and the nation will be subjected to a post-inaugural ouster of the sitting President and Vice President under D.C. Code § 16-3501, et seq. That proceeding and subsequent ouster will cause irreparable injury to the Plaintiffs—and the nation.

## V.    The balance of equities and the public interest tips in the Plaintiffs' favor.

The final two factors that the Court must consider are the balance of equities and the public's interest in the issuance of an injunction. *See Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009). When "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24, 129 S.Ct. 365 (citations omitted). Additionally, "courts of equity should [have] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (internal quotation marks and citations omitted).

The Plaintiffs file this preliminary injunction motion to avoid a constitutional crisis that would be involved in a post-inaugural ouster of the United States President and Vice President. D.C. Code § 16-3501, et seq., authorizes this Court, in proper cases, instituted by proper officers or persons, to post-election ouster of national officers of the United States including the President and Vice President of the United States. *Newman v. U.S. of America ex rel Frizzell*, 238 U.S. 537 (U.S. 1915).

Instead, to avoid that post-inaugural constitutional crisis, the Plaintiffs as voters file this preliminary injunction motion against federal officials in the District of Columbia and Governors and state legislative leaders in Arizona, Georgia, Michigan, Pennsylvania and Wisconsin requiring a constitutionally-compliant process for state-by-state post-election certification of Presidential electors and counting of their votes for the November 3, 2020 Presidential election and future elections.

The balancing of equities favors the Plaintiffs. Granting a preliminary injunction in this proceeding is better for everyone than a post-inaugural ouster. If the preliminary injunction is denied, the Plaintiffs lose something real and concrete: their voting rights are disenfranchised by an unconstitutional post-election certification process. The Plaintiffs also lose their post-election opportunity in their respective state legislatures to seek election integrity and protect their vote. On the other hand, the Defendants lose nothing by doing what the law requires: following Article II's imperative sentence regarding Presidential elections and obtaining state legislative post-election certifications prior to counting the Presidential electors' votes for President and Vice President on January 6, 2021.

The public interest favors granting the preliminary injunction too. The constitutional crisis of post-inaugural ouster should be avoided. The United States, the federal government and the states, should operate in every subject area in a constitutional way. State legislative post-election

44

certifications of Presidential votes and Presidential electors is constitutionally-required. So, the federal government and the states are legally obligated to honor that constitutional authority.

State legislative post-election certification of Presidential electors is an important way to develop public acceptance of close Presidential election results. State legislative post-election certification would help build public confidence in the states' voting systems too. Every four years, the state legislatures would be authorized to examine Presidential voters and voters' complaints as part of their post-election certifications—and would make electoral reforms accordingly. Consequently, the state legislatures' direct involvement in election integrity would build public confidence in the voting system reducing the amount of Presidential election litigation which now seems to be occurring in a cycle of every four years. It is far better to have the state legislatures hear election disputes state-by-state, as intended in Article II, then the United States Supreme Court hear all the states' election disputes as proposed in the Texas original action against Pennsylvania, Michigan, Wisconsin and Georgia—which was supported by Missouri and sixteen other states and U.S. Representative Mike Johnson and 105 other Congressional members.

## CONCLUSION

The Court should issue the preliminary injunction prior to January 6, 2021, when federal Defendants meet to count the Presidential electors to elect a President and Vice President, because the Plaintiffs have met the factors required.

Dated: December 22, 2020

/s/ Erick G. Kaardal
Erick G. Kaardal (WI0031)
Special Counsel for Amistad Project of
Thomas More Society
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: (612) 341-1074
Facsimile: (612) 341-1076
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs*