UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WISCONSIN VOTERS ALLIANCE, *et al.*,<br><br>    PLAINTIFFS,<br><br>V.<br><br>VICE PRESIDENT MICHAEL R. PENCE, *et al.*,<br><br>    DEFENDANTS. | CASE NO.: 1:20-CV-03791-JEB |

### ERICK G. KAARDAL, ESQ. AND MOHRMAN, KAARDAL & ERICKSON, P.A.'S RESPONSE TO JANUARY 7, 2021, MINUTE ORDER TO SHOW CAUSE

Non-Party Respondents Erick G. Kaardal, Esq. and Mohrman, Kaardal & Erickson, P.A. (collectively referred to as "Plaintiffs' Counsel"), by and through their counsel, Justin M. Flint, Channing L. Shor, and ECCLESTON & WOLF, P.C., pursuant to Rule 7(b) of the of the Federal Rules of Civil Procedure, hereby file this Response to this Court's January 7, 2021, Minute Order to Show Cause in the above-captioned matter, and in support thereof respectfully state:

**I.   Introduction**

Clear and convincing evidence does not exist that Erick Kaardal, Esq. engaged in conduct that would warrant discipline. Mr. Kaardal respectfully disagrees with this Court's conclusion that this lawsuit was a "symbolic political gesture" filed with "serious lack of good faith." *See* ECF No. 10 at 6. As set forth in Erick Kaardal's 42-page Declaration attached as Exhibit A, extensive research and consideration went into planning and preparing Plaintiffs' arguments for this case. *See* Ex. A, Kaardal Declaration. Likewise, Mr. Kaardal respectfully disagrees with this Court's conclusion that Plaintiffs' Counsel failed to "make any effort to serve or formally notify any

Defendant." *See* ECF No. 10 at 6. In fact, Plaintiffs' Counsel commenced efforts to serve all the Defendants on December 22, 2020 – prior to issuance of this Court's December 23, 2020, Minute Order – and actually served all but two Defendants prior to this Court's filing of the January 4, 2021, Memorandum Opinion. Ex. C, ECF No. 11 *and* Ex. D, ECF No. 15. Mr. Kaardal catalogs in detail his efforts regarding service and his interpretation that this Court's December 23, 2020, Minute Order required him to file the proofs of service only after all the Defendants were served. Ex. A at ¶¶ 41-48. By January 4, 2021, when this Court issued its Memorandum Opinion, Mr. Kaardal had two remaining Defendants to serve which is why he had not filed proofs of service. *Id*.

In his Declaration, Mr. Kaardal answers this Court's other questions regarding the timing of filing the Complaint in this case, Plaintiffs' standing to pursue this lawsuit, this Court's personal jurisdiction over the Defendants, and the legal basis underpinning the central arguments in the Complaint and Motion for Preliminary Injunction. Accordingly, this Court should exercise its discretion and decline to refer Mr. Kaardal to the Committee on Grievances ("the Committee") due to the potential chilling effect a referral would have on future litigants who assert good faith arguments for an extension, modification, or reversal of existing law.

**II.    Factual Background**

The 59th quadrennial presidential election was held on Tuesday, November 3, 2020. The electoral votes were cast in the respective states on December 14, 2020, pursuant to 3 U.S. Code § 7 which states:

> The electors of President and Vice President of each State shall meet and give their votes on the first Monday after the second Wednesday in December next following their appointment at such place in each State as the legislature of such State shall direct.

On December 22, 2020 – just eight (8) days later – Plaintiffs filed the above captioned action. As set forth in Mr. Kaardal's Declaration, the claims in this case were not ripe before December 14, 2020, and could possibly have been mooted prior to that date. Ex. A at ¶¶ 18-19. On December 22, 2020, Plaintiffs filed their Complaint and Motion for Preliminary Injunction. *See* ECF Nos. 1-8. Mr. Kaardal immediately began efforts to serve all Defendants. Ex. A at ¶¶ 41-42. On December 23, 2020, this Court issued a Minute Order which stated in full "MINUTE ORDER: The Court ORDERS that, as soon as Plaintiffs file proofs of service on all Defendants, a briefing schedule and hearing shall be set. So ORDERED by Judge James E. Boasberg on 12/23/2020." Ex. F, Docket, at 7. As Mr. Kaardal explains:

> Accordingly, in good faith, I interpreted this Court's Order as requiring the proofs of service be filed after "all" the Defendants were served. I interpreted the order in this manner because I assumed that the Court could not set a briefing schedule and hearing date until after all defendants had been served. I also did not want to place the burden on the Court of determining when all of the defendants had been served. Rather, I believed that what the Court wanted me to do was to file the proofs of service after all of the defendants had been served.

Ex. A at ¶ 44.

Notably, Rule 4(m) of the Federal Rules of Civil Procedure provides that Defendants are to be served within 90 days after the Complaint is filed. USCS Fed Rules Civ Proc R 4(m) (2020). Thirteen (13) days after the Complaint was filed and twelve (12) days after its Minute Order on December 23, 2020, a timeframe which included two weekends, Christmas Day and New Year's Day, this Court issued its Memorandum Opinion on January 4, 2021, stating in relevant part that there was a "failure to make any effort to serve or formally notify any Defendant – even after reminder by the Court in its Minute Order – renders it difficult to believe that the suit is meant seriously." *See* ECF No. 10 at 6. This Court also stated:

3

> Courts are not instruments through which parties engage in such gamesmanship or symbolic political gestures. As a result, at the conclusion of this litigation, the Court will determine whether to issue an order to show cause why this matter should not be referred to its Committee on Grievances for potential discipline of Plaintiffs' counsel.

*Id*. Following this Court's Order, Mr. Kaardal memorialized his efforts regarding service in a letter to this Court which was electronically filed at ECF Number 11 on January 5, 2021. Ex. C, ECF No. 11. Also on January 5, 2021, Mr. Kaardal filed multiple Return of Service Affidavits and Waiver of Service Forms at ECF Numbers 12-14. Ex. E, ECF Nos. 12-14. This Court's Clerk advised Mr. Kaardal on January 6, 2021, that his letter to this Court was rejected because it did not have a case caption so Mr. Kaardal refiled the Notice of Filing of Proofs of Service on January 6, 2021. Ex. D, ECF No. 15.

On January 7, 2021, Plaintiffs filed a Notice of Voluntary Dismissal without Prejudice. *See* ECF No. 16. Subsequently, on January 7, 2021, this Court issued two Minute Orders: one dismissing this case without prejudice pursuant to Plaintiffs' Voluntary Dismissal and one ordering Plaintiffs' Counsel to "show cause why the Court should not refer him to the Committee on Grievances for all of the reasons discussed in its recent [10] Memorandum Opinion." Ex. F at 8.

### III. Summary of Arguments in Complaint and Motion for Preliminary Injunction

The crux of the Complaint and Motion for Preliminary Injunction is that the Federal Electoral Counting Act, and specifically 3 USC § 15, is unconstitutional as an unconstitutional interference with state legislatures' power to approve Presidential votes and Presidential Electors granted by Article II and reserved by the Tenth Amendment. *See e.g.* Ex. A at ¶¶ 51-56. Plaintiffs asserted that "only the state legislature could certify the Presidential Electors after the election under Article II and send that certification to Congress to be counted by the President of the U.S. Senate." *Id*. at ¶ 53.

As Mr. Kaardal explains in his attached Declaration, "under the intertextual constitutional arguments sometimes called the independent state legislature doctrine, Article II grants each state legislature with the sole plenary authority to determine the Presidential Electors which federal law, except for a constitutional amendment, and state law cannot abridge." *Id*. at ¶ 56 (internal quotations omitted). Mr. Kaardal explains, "[i]f the Plaintiffs prevailed, since the state legislature has plenary authority, and a corresponding constitutional duty, and the state legislature is not subject to any court injunction, the Plaintiffs proposed an appropriate declaratory judgment and related injunction under Rule 65 of the Rules of Civil Procedure – i.e., that is Congress not counting the votes of Presidential Electors who did not obtain post-election certification from the respective state legislatures." *Id*. at ¶ 56.

### IV. Legal Argument

Local Rule 83.16(d)(2) provides in full, "[a]ny court, judge or United States magistrate judge in the District of Columbia may refer to the Committee the name of any attorney subject to these Rules on a Complaint that such attorney has engaged in conduct which, if substantiated, would warrant the imposition of discipline." LCvR 83.16(d)(2) (2021). Following the filing of charges, the Discipline Panel only imposes discipline on an attorney if the charges are sustained by clear and convincing evidence. LCvR 83.16(d)(8) (2021).

In disciplinary proceedings, the District of Columbia Office of Disciplinary Counsel also has the burden of establishing violations of the District of Columbia Rules of Professional Conduct ("Rules") with clear and convincing evidence. *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001). Because an attorney admitted to practice before this Court is subject to the Rules, this Court can look to District of Columbia Court of Appeals decisions which apply and interpret the Rules.

The District of Columbia Court of Appeals has frequently defined the clear and convincing evidence standard in the context of attorney discipline. Specifically, the clear and convincing evidence standard is more stringent than a preponderance of the evidence standard. *In re Dortch*, 860 A.2d 346, 358 (D.C. 2004). Under the clear and convincing evidence standard, evidence must be presented "that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Allen*, 27 A.3d 1178, 1184 (D.C. 2011) (internal quotations omitted). The degree of persuasion for clear and convincing evidence is "much higher than mere preponderance of the evidence but still somewhat less than beyond a reasonable doubt." *D.C. v. Hudson*, 404 A.2d 175, 179 (D.C. 1979) (internal quotations omitted). Therefore, the clear and convincing standard "expresses a preference for [the attorney's] interests by allocating more of the risk of error to [Disciplinary Counsel] who bears the burden of proof." *In re Dortch*, 860 A.2d at 358 (internal quotations omitted).

Clear and convincing evidence does not exist that Mr. Kaardal acted in bad faith or filed a frivolous lawsuit. In fact, just the opposite, Mr. Kaardal submits with this Response a 42-page Declaration which details his basis in law and fact for this lawsuit, his research underpinning the legal arguments he asserted on behalf of his clients in this case, in addition to addressing this Court's other concerns raised in its January 4, 2021, Memorandum Opinion. *See* Ex. A. Mr. Kaardal conducted research to determine the viability of Plaintiffs' potential arguments and declares:

> Prior to filing the Complaint in this case, I performed a significant amount of legal research. My legal research determined that there is a strong legal argument that after each Presidential election every four years each state legislature must meet and vote to determine the state's Presidential Electors. The underlying legal basis of this argument rests on the "independent state legislature doctrine," a legal doctrine essentially stating that when the U.S. Constitution calls for the state legislatures to perform an act, each state

6

> legislature, is the only body authorized to perform the act without interference from any other body or law.

Ex. A at ¶ 51. As Mr. Kaardal declares under penalty of perjury, he takes his duty as an officer of this Court seriously and had a good faith belief that his clients had a meritorious claim that the Federal Electoral Counting Act, and specifically 3 USC § 15, is unconstitutional under Article II Section 1 of the United States Constitution. *Id*. at ¶ 130.

Moreover, Mr. Kaardal's arguments supporting personal jurisdiction over the state Defendants acting in their official capacity should not be the subject of a grievance because the assertion of personal jurisdiction over state officials acting in their official capacity is an "open question" in this Circuit as this District Court recognized as recently as 14 months ago in *Trump v. Comm. on Ways and Means*, 415 Supp.3d 98, 106 (D.D.C. 2019). In fact, the issue is so "open" and unsettled the Circuit Court appointed amicus counsel to brief the issue to the Circuit Court in *West v. Lynch*, 427 U.S. App. D.C. 260 (2017). Mr. Kaardal's arguments are virtually identical to the arguments made by the amicus counsel appointed by the Circuit Court. These arguments should not be the subject of a referral to the Committee as alleged misconduct.

Importantly, Mr. Kaardal's actions as counsel for Plaintiffs in this lawsuit are supported with a professional ethics expert opinion from Richard Driscoll, Esq. Mr. Driscoll is admitted to practice in the District of Columbia, Maryland, and Virginia; has been an attorney for 30 years and a member of this Court for over 20 years; and since at least 1995, a focus of his practice involves advising and representing individual attorneys and law firms regarding their professional obligations and liability. Ex. B, Driscoll Declaration at ¶ 1.

As set forth in Mr. Driscoll's attached Declaration at Exhibit B, Mr. Driscoll opines to a reasonable degree of legal certainty that Mr. Kaardal acted in compliance with Rule 3.1. *Id*. at ¶¶ 3, 20. Mr. Driscoll notes:

> Attorneys who are admitted to practice before the District Court are subject to the District of Columbia Rules of Professional Conduct ("Rules"). A violation of the Rules is grounds for discipline by the Committee on Grievances ("Committee"). LCvR 83.15(a). When deemed necessary or appropriate, a Court may refer a Complaint to the Committee regarding any attorney who engaged in conduct which, if substantiated, would warrant the imposition of discipline. LCvR 83.16(d)(2). If the alleged misconduct identified in a complaint to the Committee is sustained by clear and convincing evidence, the Committee "may reprimand, censure, suspend, disbar or otherwise discipline" the attorney. LCvR 83.16(d)(8).

*Id*. at ¶ 5.

At issue in this matter is Rule 3.1 of District of Columbia Rules of Professional Conduct ("Rule 3.1") which is titled "Meritorious Claims and Contentions" and provides in part:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.

D.C. Bar Appx. A, Rule 3.1 (2021).

As Mr. Driscoll sets forth:

> Attorney conduct is governed by the words of each Rule of Professional Conduct. However, general guidance from the introductory Scope of the Rules applies to Mr. Kaardal's circumstances. The District of Columbia, and other jurisdictions, view the Rules as "rules of reason" that "should be interpreted with reference to the purposes of legal representation and of the law itself." Scope, Comment [1]. "The Rules simply provide a framework for the ethical practice of law." *Id*. at Comment [2].

Ex. A at ¶ 8.

Importantly, Mr. Driscoll concludes:

> Mr. Kaardal's compliance with Rule 3.1 is evaluated by the facts and circumstances known on December 22, 2020, the filing date for the Complaint and related Motion for Preliminary Injunction:
>
> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. **The Rules**

> *presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation*. Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors, and whether there have been previous violations.
>
> Scope, Comment [3] (emphasis added).

Ex. A at ¶ 9.

Moreover, as Mr. Driscoll explains:

> When applying Rule 3.1 in the District of Columbia, the Committee is instructed that the law is not static and determining a meritorious claim from an ethical perspective must account for the "law's ambiguities and potential for change." Comment [1] to D.C. Rule 3.1 reads, in part:
>
> The law, both procedural and substantive, establishes the limits within which an advocate may proceed. ***However, the law is not always clear and never is static***. Accordingly, in determining the proper scope of advocacy, ***account must be taken of the law's ambiguities and potential for change***.
>
> (Emphasis added.)

*Id*. at ¶ 10.

As Mr. Driscoll opines:

> Claims for relief have merit even when the attorney advancing a claim does not believe it will succeed provided there is a basis in law and fact that is not frivolous. The guidance from Comment [2] applies with full force to this case:
>
> Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous if the lawyer is ***unable either to make a good-faith argument on the merits of the action taken or to support the action taken by a good-faith argument for an extension, modification, or reversal of existing law***.

> Rule 3.1, Comment [2] (emphasis added). Comment [2] clarifies that likelihood of success on the merits is not the touchstone for determining a meritorious claim. Indeed, every unsuccessful litigant advanced at least one claim that was not likely to succeed.

Ex. A at ¶ 11.

Significantly, Mr. Driscoll opines:

> The language of, and Comments for, Rule 3.1 clearly demonstrate that determining whether a claim is meritorious is not concerned with the likability of the plaintiff(s), their political viewpoints, the equity of their position, the equity of the relief sought, whether one would advise their own client to file such a claim, or any similar considerations. ***It matters only whether there is an objective basis in law and fact for the claim that is not frivolous***.

*Id*. at ¶ 12 (emphasis original).

Mr. Kaardal explains in his Declaration the Complaint and Motion for Preliminary Injunction followed the legal arguments asserted by Vasan Kesavan in his law review article "Is the Electoral Count Act Unconstitutional?" which argues that 3 USC § 15 is unconstitutional. Ex. A at ¶ 74 *and* Ex. G, Vasen Kesavan, *Is the Electoral Count Act Unconstitutional*, 80 N.C. L. Rev. 1653 (2002). Additionally, Mr. Driscoll explains:

> Relying on intertextual and structural modes of constitutional interpretation, Plaintiffs allege that the term "direct" as used in Article II, Section 1, requires the state legislature to be directly engaged in, and may not delegate, the post-election certification of Presidential votes and Presidential electors. Recently, the U.S. Court of Appeals for the Seventh Circuit acknowledged that the "Electors Clause" is susceptible to "at least" two differing interpretations, and possible more:
>
> ***Defining the precise contours of the Electors Clause is a difficult endeavor. The text seems to point to at least two constructions, and the case law interpreting or applying the Clause is sparse***. This case does not require us to answer the question, as the Commission's guidance did not amount to a violation under the two most likely interpretations.
>
> *Trump v. Wisconsin Elections Comm'n,* 983 F.3d 919, 926 (7th Cir. 2020) (emphasis added). The Seventh Circuit's statements

> recognize the ambiguity in the Electors Clause, which places the alleged claims of the Complaint within the area where "consideration should be given to the clarity or ambiguity of the law." *In re Spikes,* 881 A.2d 1118, 1125 (D.C. 2005). Mr. Kaardal was engaged in a "difficult endeavor." Because "the law is not always clear and never is static, . . . lawyers must be able to press for change and reform in the law" *Id*.

Ex A at ¶ 17.

Accordingly, Mr. Kaardal had a good faith argument for an extension, modification, or reversal of existing law in conformance with Comment [2] to Rule 3.1. Mr. Kaardal, on behalf of his clients, advanced an argument supported by Supreme Court precedent and a law review article addressing the constitutionality of the Federal Electoral Counting Act, specifically 3 USC § 15, as well as state statutes – i.e. Ariz. Rev. Stat. § 16-212 (B), Ga. Code Ann. § 21-2-499 (B), Mich. Comp. Laws. § 168.46, Wis. Stat. § 7.70 (5) (b) and 25 Pa. Cons. Stat. § 3166 which impermissibly delegate post-election certification, perpetually and in a wholesale fashion, to state executive branch officials. Ex. A at ¶ 129. Mr. Driscoll also concludes:

> Based on my review of the Complaint, Motion for Preliminary Injunction, authorities cited therein, Declaration of Erick G. Kaardal and independent research, it is my opinion that the claims alleged in the Complaint filed by Mr. Kaardal on December 22, 2020 do not violate Rule 3.1 of the D.C. Rules of Professional Conduct. At a minimum, Mr. Kaardal possessed a legal basis consisting of a good-faith argument for an extension, modification, or reversal of existing law and a factual basis consisting of five state legislative schemes consistent with his legal theory.

Ex. B at ¶ 16.

While this Court ultimately did not agree with Plaintiffs' arguments, there is a winner and a loser in every case. Because a party is unsuccessful in a lawsuit does not mean the lawsuit, claim, or defense was frivolous or in bad faith. As Mr. Driscoll notes, "[i]ndeed, every unsuccessful litigant advanced at least one claim that was not likely to succeed." Ex. B at ¶ 11. In fact, Comment

[2] to Rule 3.1 expressly permits a lawyer to advance a client's position "even though the lawyer believes that the client's position ultimately will not prevail." D.C. Bar Appx. A, Rule 3.1, Cmt [2]. Notably, after this Court issued its Order denying the Motion for Preliminary Injunction and disagreement with Plaintiffs' legal theories, Plaintiffs dismissed this lawsuit before any of the Defendants appeared.

In quoting from a Report issued by the District of Columbia Board on Professional Responsibility, the District of Columbia Court of Appeals recently recognized "attorneys in the District of Columbia should not fear discipline for making aggressive and creative arguments." *In re Pearson*, 228 A.3d 417, 424 (D.C. 2020). Contrary to the Court of Appeals' endorsement in *Pearson*, this Court would establish a chilling effect if it refers Mr. Kaardal to the Committee for advancing arguments regarding his clients' perceived constitutional violations – arguments which have a legal basis underpinning them as opposed to arguments which are "creative and aggressive." This Court should exercise its judicial discretion not to refer Mr. Kaardal to the Committee due to the potential chilling effect and precedent it will set for future litigants who want to challenge a law or statute as unconstitutional with arguments which have a basis in fact and law.

V.   **Conclusion**

In the end, Mr. Kaardal has not engaged in conduct that warrants the imposition of discipline. Clear and convincing evidence of a violation of the Rules does not exist as supported by expert opinions from Richard Driscoll, Esq. Ex. B. Moreover, a significant chilling effect on future litigants would occur if this Court refers Mr. Kaardal to the Committee for advancing his clients' good faith argument for an extension, modification, or reversal of existing law as expressly permitted by Rule 3.1.

**WHEREFORE**, for the foregoing reasons, the Plaintiffs' Counsel respectfully requests this Court exercise its judicial discretion and decline to refer Mr. Kaardal to the Committee on Grievances.

Respectfully submitted,

ECCLESTON & WOLF, P.C.

/s/  *Channing L. Shor*
Justin M. Flint (#491782)
Channing L. Shor (#1024861)
1629 K Street, N.W., Suite 260
Washington, D.C. 20006
(202) 857-1696 (Tel)
(202) 857-0762 (Fax)
flint@ewdc.com
shor@ewdc.com
*Counsel for Erick G. Kaardal, Esq. and*
*Mohrman, Kaardal & Erickson, P.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February 2021 a copy of the foregoing Response to this Court's January 7, 2021, Minute Order to Show Cause was served to all Counsel of Record by this Court's electronic filing system.

/s/  *Channing L. Shor*
Channing L. Shor (#1024861)
